**PETITIONER'S EXHIBIT "A"**

Declaration of Brock Purviance

Brock Purviance
Register Number 34230-013
C/o Federal Correctional Institution
1900 Simler Avenue, S-1
Big Spring, Texas 79720

*In propria persona*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ALASKA

| | | |
|---|---|---|
| **BROCK PURVIANCE,** | § | Case Number: _____ |
| | § | Related to:    (3:06-cr-0040-JWS) |
| Defendant-Petitioner | § | |
| | § | **DECLARATION OF:** |
| versus | § | |
| | § | **BROCK PURVIANCE** |
| **UNITED STATES OF AMERICA,** | § | |
| | § | |
| Plaintiff-Respondent. | § | |
| | § | |
| | § | |

I, BROCK PURVIANCE, do hereby declare that:

1. I am the Defendant/Petitioner in the above entitled cause and action.

2. I am over the age of 21 years.

3. I have personal knowledge of the following facts, and if called to testify, I could and would competently testify thereto.

4. I signed my plea agreement on my counsel's representation that JH would be called to testify at my sentence hearing.

5. Days before my sentence hearing, my counsel told me that she would not call JH to testify because it was unknown what JH would say.

6. Despite my counsel's refusal, I continued to insist that JH be called to testify at my sentencing hearing.

7. I told my counsel that I was certain JH's testimony would be truthful and favorable.

8. JH told me the week we spent together in August 2004 was the "happiest week of [her] life". I told this to my counsel.

9. I implored for my counsel to tell the Court the truth about my relationship with JH at sentencing, that JH and I truly loved each other and planned on getting married when she turned 18. Counsel repeatedly told me, "Love is not a defense.". I told her it had to be a defense because it was the truth.

10. After I changed my plea, my counsel told me the Government revealed that JH had been interviewed more than once by the FBI. My counsel told me that she had requested transcripts of said interviews from the Government.

11. JH and my primary medium of communication was telephone, followed by internet chat and e-mail, respectively. At no point in JH and my relationship did e-mail ever comprehensively document our conversations on any topic. I explained this to my counsel.

12. I asked my counsel to review my phone bills and show them to the Court to prove that JH and I spoke for hours daily as the usual communication. Counsel refused to review my phone bills.

13. I did not want the undue influence enhancement to appear "agreed to" in my presentence report, and asked my counsel to file an objection to its inclusion as part of my total offense level. Counsel told me it would not appear "agreed to".

14. My objectives in conversing with KH were to personally introduce myself, make clear that I genuinely loved JH and sought to marry and spend the rest of my life with her, invite peace with KH (as well as the rest of JH's family), offer to help pay for JH's medical expenses, and begin a healthy relationship with KH and the rest of JH's family. I explained this to my counsel and asked for her to file an objection to paragraph 27 of my presentence report accordingly.

15. My true agenda in writing to KH was to introduce myself, make clear that I genuinely loved JH and sought to marry and spend the rest of my life with JH, invite peace with KH (as well as the rest of JH's family), and begin a healthy relationship with KH and the rest of JH's family. I explained this to my counsel and asked her to include these facts in her objection to paragraph 36 of my presentence report.

16. Months prior to sentencing, I told my counsel of my alcohol and marijuana abuse. I asked my counsel to initiate this topic at my sentence hearing and ask the Court to recommend the Bureau of Prison's Residential Drug and Alcohol program for me.

17. I told my counsel I was against her disparaging JH's character as a strategy to defend me and that I wanted no part of any such disparagement.

18. Directly after sentencing, I briefly met with Counsel in the court building. My first words to Counsel were, "I want to appeal.". I explained that I was extremely upset with the sentence I received and that I felt had Counsel called JH to testify, as I had repeatedly demanded, I would not have received the enhancement for undue influence. Counsel even told me that not calling JH to testify was "probably an appealable issue". Counsel explained that I would receive a higher sentence

upon reconsideration of the same issues if I appealed, and subsequently, Counsel thought appealing was a "bad idea". At that point, the meeting was abruptly interrupted by a U.S. Marshal opening the door to (my part of) the meeting room and announcing to me, "It's time to go.". I explained that I was still talking with Counsel. Unaffected, the U.S. Marshal repeated, "It's time to go." and took me, effectively ending the meeting.

19. A day or two after sentencing, I called Counsel from Cook Inlet Pretrial and requested an in-person meeting to discuss my appeal. Counsel explained that she was "very busy" and "[didn't] have time to talk", and that she was "not sure when [she would] be able to come in". No such meeting took place as I was flown back to SeaTac FDC on the morning of January 7, 2007. From SeaTac FDC, I, still wanting to appeal, continued to make efforts to get a hold of Counsel by phone, but was unsuccessful. Despite my efforts, I was not afforded an opportunity to discuss my appeal with Counsel, nor did Counsel file a direct appeal as I'd demanded (before my 10-day time limit to file a notice of appeal expired). After my time limit expired, not knowing anything about my legal rights, I figured my chance to appeal was gone, so I did not push the issue from that point on.


   I declare under penalty of perjury under the law of the United States of America and pursuant to Title 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge and belief. Executed this   20th   day of   December   , 2007, at Howard County, Texas.

**Dated:**            December 20, 2007



_____
BROCK PURVIANCE