**AFFIDAVIT OF JARED JURGENSMEIER
IN SUPPORT OF DEFENDANT-PETITIONER'S
MOTION UNDER 28 U.S.C. § 2255
TO VACATE, SET ASIDE, OR CORRECT
SENTENCE OF A PERSON IN FEDERAL CUSTODY**



RECEIVED

JAN 1 4 2008

CLERK, U.S. DISTRICT COURT
ANCHORAGE, A.K.

I, Jared Jurgensmeier, do hereby declare:

3:06-cr-00040-JWS

1. I have no criminal record.

2. I hold a Bachelors of Science in Aerospace Engineering degree and a Master's of Business Administration degree.

3. I am employed as an Engineering Project Manager for Cymer, Inc.

4. I have served as a commissioned officer in the United States Air Force since September 1998 and currently hold the rank of Captain.

5. Brock Purviance ("Brock") and I have been close friends for more than 21 years. We went to elementary, middle, and high school together.

6. I lived with Brock in 1997 and 1998. Both before and after that time period, when living in different cities, Brock and I would stay at each others' homes when visiting one another, typically twice a year.

7. Brock and I have stayed in close touch throughout the duration of our friendship, at the least communicating with each other approximately once per week.

8. Brock has been a close friend of my family for the duration of our friendship.

9. Brock told me about his relationship with JH in the early summer of 2004. He spoke highly and only lovingly of JH; Brock never spoke disrespectfully or lewdly of her. Brock frequently spoke of marrying JH when she turned 18 and spending his future with her.

10. I had been present when Brock and JH were on the phone and on the computer instant messaging many times. I had first hand knowledge of some of their conversations and it was more than clear that Brock and JH both cared very much for each other.

11. From knowing Brock as long and as closely as I have, I can say with certainty that he genuinely loved JH.

12. Throughout the duration of his relationship with JH, Brock repeatedly expressed his desire for communication and a healthy relationship with JH's family.

13. Brock showed me the letter he sent to KH prior to sending it. Based on our communication, it was clear to me that his intention in sending the letter was a genuine effort to develop a healthy relationship with KH and the rest of JH's family.

14. Brock talked with me prior to calling KH in January 2006. It was evident that his intention in calling her was to follow up on the letter he had previously sent and to try and make peace. He also wanted to help JH's family pay for JH's medical expenses.

15. Over the past 18 months I have found several websites that KH has posted libelous and malicious material about Brock. It is evident from those postings that she doesn't understand Brock's well intentioned efforts towards her family or his love for JH. I have reported her numerous times to the operators of various websites containing this material and have been successful at getting some of the nearly 10 sites taken down. She has also encouraged friends of hers to post material to further her attacks. To this day, she continues to post libelous and malicious, and threatening material on several websites.

16. I talked with Sue Ellen Tatter, Brock's defense attorney, at least half a dozen times throughout the lead up to his bail hearing. I provided Sue Ellen written statements and information on the phone that would assist in Brock's defense, information that would disprove false statements by others against Brock, and volunteered to support him. I reaffirmed to Ms. Tatter that I know Brock as well as anyone and would be willing to testify in court (in person or via phone). She assured me she would be calling me during his bail hearing. I made arrangements with my employer to support this hearing via phone and waited around for hours to receive the call. That call never came and I called Ms. Tatter later to ask what was going on. I never got a call from her but rather from Bruce Johnson, who was assisting her in the trial. He told me Ms. Tatter chose not call any of Brock's friends.

17. Ms. Tatter later assured me that she would use my testimony at Brock's sentencing and she would contact me as the time drew nearer and she needed additional information. After not hearing from her and with only days until the sentencing, I contacted her to inquire on the status and what I could do to help. I felt that I had to prod her to use my information and testimony. I was very nervous about the preparation leading to Brock's sentencing and felt it wasn't being given adequate attention based on the fact that none of Brock's closest friends had been contacted to provide testimony. Finally a few days before the sentencing, Ms. Tatter contacted me and told me to be ready to testify on the phone. I once again made arrangements with work and had my cell phone on me at all times. Once again, hours passed from the time I was told to be ready. However, Ms. Tatter never called. I finally called late in the day to find out what happened and never heard back from Ms. Tatter. I emailed her for status and never heard back. It wasn't until I contacted Brock's parents that I found out the sentencing was over and the outcome. I never heard anything more from Ms. Tatter.

18. A day after Brock was sentenced, he called me and let me know that he was going to appeal his sentence.

19. I am aware that Brock abused alcohol and marijuana for approximately three years leading up to his arrest.

20. I am willing, if not insistent, to testify to the foregoing facts in Court.

I declare under the penalty of perjury and pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct.

_____          _____
Jared Jurgensmeier                                             29 November 2007

Notary Public:

JOUNG HEE KIM
Commission # 1729777
Notary Public - California
San Diego County
My Comm. Expires Mar 8, 2011

SUBSCRIBED AND SWORN TO BEFORE ME
THIS 29 DAY OF Nov , 2007.
BY JARED DAVID JURGENSMEIER

_____
NOTARY PUBLIC