Jerald Lee Brainin
Law Offices
P.O. Box 66365
Los Angeles, CA. 90066
Telephone: 310-397-3910
Facsimile: 310-737-1702
email: jbrainin@braintrustusa.com

Attorney for Defendant/Petitioner
Brock Purviance

# UNITED STATES COURT

# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA , | ) |
| | ) No. 3:06-cr-00040 -JWS-JDR |
| Plaintiff, | ) |
| | ) |
| v. | ) SUPPLEMENT TO PENDING § 2255 |
| | ) MOTION TO VACATE, SET ASIDE |
| BROCK PURVIANCE, | ) OR CORRECT PETITIONER'S |
| | ) SENTENCE; MEMORANDUM OF |
| | ) POINTS AND AUTHORITIES AND |
| Defendant. | ) ADDITIONAL EXHIBITS. |
| | ) |

Petitioner, Brock Purviance, by and through his appointed counsel of record,

hereby submits the following supplement to his currently pending § 2255 motion.

Petitioner incorporates by reference his January 14, 2008 petition and accompanying

memorandum of points and authorities and adds the following additional grounds for

relief, factual allegations in support of these claims, and supplemental memorandum

points and authorities[1].

---

[1] Petitioner's currently pending 2255 motion is accompanied by Exhibits A-K, which
will be referred to as such in this supplement: Exhibit A – Declaration of Brock
Purviance, pp. 1-3; Exhibit B: JH's initial statement to the FBI, p. 1; Exhibit C: JS's

1

# I

# INTRODUCTION

On January 3, 2007, Brock Purviance pled guilty to one count of travel with intent to engage in illicit sexual conduct, in violation of 18 U.S.C. 2423(b). The court enhanced the base offense level from 24 to 28 (U.S.S.G. § 2A3.2), imposing two points for unduly influencing the minor (U.S.S.G. § 2A3.2(b)(2)(B)) and two points for using a computer or internet access device to influence the minor (U.S.S.G. § 2A3.2(b)(3)). The court reduced the adjusted offense level by 3 points for acceptance of responsibility, arriving at a total offense level of 24, an advisory guideline range of 57-71 months, and sentencing Purviance to the high end or 71 months in prison, accompanied by a 25 year term of supervised release[2]. (PSR 16.) Purviance had no criminal history.

Purviance subsequently filed a § 2255 motion, claiming that his trial counsel was ineffective at sentencing and failed to file a notice of appeal. He specifically

---

statement to the FBI, p. 1; Exhibit D: letter from JH to Petitioner during August 2004 visit, p. 1; Exhibit E: Letter from JS to Petitioner during August 2004 Exhibit, p. 1; Exhibit F: letter from JH to Petitioner after August 2004 visit, p. 1; Exhibit G: Letter from JH's counselor, pp. 1-2; Exhibit H: Affidavit of Jared Jurgensmeier, pp. 1-3; Exhibit I: affidavit of Janet Munoz, p. 1; Exhibit J: affidavit of Frederick Munoz, p. 1. The following additional exhibits are being submitted in conjunction with this supplemental filing: Exhibit K: Declaration of Petitioner, p. 1; Exhibit L: Declaration of trial counsel Sue Ellen Tatter, pp. 1-2; Exhibit M, partial transcript of sentencing proceedings, referenced by the original page numbers, top right corner of the page, pp 3-29; Exhibit N, Supplemental Declaration of Brock Purviance, pp. 1-2; Exhibit O, Imposition of sentence, original pp. 2-9; Exhibit P, J&C Supervised Release conditions, original pp. 3-5.

[2] The United States Sentencing Guideline Manuel (November 1, 2003) was used in this case, as the targeted conduct occurred around August 18, 2004. (PSR 40.)

faulted his counsel for failing to interview, depose, or call the minor, JH, to testify at sentencing in support of his contention that he did not unduly influence her, and that there was sufficient evidence to rebut the presumption that the enhancement should apply.

## II

## ADDITIONAL GROUNDS AND FACTUAL ALLEGATIONS IN SUPPORT OF PETITIONER'S PENDING SECTION 2255 MOTION

1. Trial counsel was ineffective for failing to notify the court of an irreconcilable conflict that had developed with her client and by failing to withdraw as counsel prior to sentencing. Purviance had pled guilty based on counsel's representation and his understanding that JH would be called to testify at the sentencing hearing. When counsel informed Purviance several days prior to the hearing that she had changed her mind about having JH testify, he continued to insist that her testimony was necessary to defeat the undue influence enhancement. Had he known JH would not be called, and had he understood his right to request new counsel based on this conflict, he would have requested substitute counsel before proceeding to sentencing. (Exh: K.)

2. Trial Counsel was ineffective for failing to challenge at sentencing the reasonableness of the imposed 25 year term of supervised release. The length of a supervised release term is subject to the considerations for reasonableness enumerated in 18 U.S.C. § 3553(a)(1) and (2). The district court adopted the probation officer's recommended 25 year term without objection from the defense and without

enunciating any explanation as to why it chose a quarter century term.

    3. Trial counsel was ineffective for failing to object to the imposition of Special Conditions of supervised release that will require Petitioner to subject himself to plethysmorgraph and polygraph testing, and that will excessively restrict his use of the internet. He claims that the Ninth Circuit has held these conditions to be either excessive, intrusive, unreasonable, or would otherwise violated his Fifth Amendment right to remain silent.

### B. Verification

    I, Jerald Brainin, have been appointed by the Alaska Federal Public Defender's Office to represent Brock Purviance in the above-entitled action. He is currently housed at the Federal Correctional Institution in Big Spring, Texas. My office is in Los Angeles. Because of the distances involved, I was unable to obtain his verification signature before having to file this pleading. I am therefore making this verification on behalf of Mr. Purviance.

    I have read the 2255 motion filed by Mr. Purviance and have reviewed all of the district court documents in his case; I have also spoken a length with Mr. Purviance about the additional claims asserted in this supplement, and I am informed and believe that the facts alleged therein to be true and on that ground allege that they are true.

    I declare under penalty of perjury that the foregoing is true and correct.

    Executed the 12th day of April, 2008, at Los Angeles, California.

                    _____

                    Jerald Lee Brainin

## III

## MEMORANDUM OF POINTS AND AUTHORITIES

### A. Ineffective Assistance Of Counsel Standards Of Review

The right to counsel is a fundamental right of criminal defendants; it assures the fairness, and thus the legitimacy, of our adversarial process. The essence of an ineffective-assistance claim is that counsel's unprofessional errors so upset the adversarial balance between defense and prosecution that the trial was rendered unfair and the verdict rendered suspect. *Kimmelman v. Morrison,* 477 U.S. 365, 374, 106 S.Ct. 2574, 91 L.Ed.2d 305 (1986) (citation omitted).

Evaluating the effectiveness of counsel's assistance requires a two-part inquiry. "In order to prevail, the defendant must show both that counsel's representation fell below an objective standard of reasonableness, and that there exists a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Id.* (quoting *Kimmelman,* 477 U.S. at 375, citing *Strickland v. Washington,* 466 U.S. 668, 694, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). A reasonable probability is "a probability sufficient to undermine confidence in the outcome." *Strickland,* 466 U.S. at 694.

### B. Trial Counsel Was Ineffective For Failing To Perfect Petitioner's Right To Appeal.

A lawyer's deficient performance, which leads to the forfeiture of his client's right to appeal, gives rise to a presumption of prejudice. *Roe v. Flores-Ortega*, 528 U.S. 470, 471, 484 (2000). The defendant must still show that he would have appealed

5

or had an interest in appealing, in which case he need not specify the issues he would raise if his right to appeal were reinstated. *Id*. at p. 485. The performance and prejudice requirements may both be satisfied if the defendant has non-frivolous grounds for an appeal. *Id*. Because Petitioner expressed his desire for an appeal (Exh. A, ¶¶ 18-19), and also had non-frivolous grounds with which to pursue an appeal, Petitioner was prejudiced by his attorney's omission.

Purviance has a clearly non-frivolous appellate challenge to the district court's imposition of the two level undue influence enhancement. As a threshold proposition, the application of the contested undue influence enhancement appears to be an issue of first impression in the Ninth Circuit. Another district court, addressing a situation very similar to the one presented by this case - *United States v. Bitsilly*, 386 F.Supp.2d 1192 (D.C.N.M., 2005) – concluded that the enhancement was not warranted.

In *Bitsilly*, the defendant pleaded guilty to criminal sexual abuse of a minor, and the court assigned him a two level enhancement for unduly influencing the minor. Bitsilly and the minor were admittedly engaged in a consensual relationship. The minor did not report him to the police, nor ever allege that he was violent or abusive. She stated that Bitsilly had never forced her to have sex with him, but that it was a joint decision. She stated that she loved Bitsilly and testified at the sentencing hearing that defendant was helpful, respectful, and easy going. The court noted that Bitsilly himself expressed strong feelings for the minor, as well as a desire to marry her. 386 F.Supp.2d at p. 1196-1197. The court concluded that these extraordinary facts separate[d] defendant's case from so many of the other sexual abuse cases that the

court regularly sees," referring to "cases involving sexual predators, who abuse children for their own sexual gratification." *Id*. at p. 1197. As discussed more fully below, the factual context in *Bitsilly* is strikingly similar to the facts here.

Not only did Purviance express a desire for an appeal, his grounds for appealing meet both prongs of the *Strickland's* ineffective assistance test. His lawyer's failure to perfect his appeal rights was therefore prejudicial. (Exh: A, ¶¶ 18-19, Exh: I and J.)

### C. Trial Counsel's Failure To Interview And/Or Call JH To Testify At Sentencing Prejudiced Petitioner's Defense.

Although Purviance admitted his offense and pled guilty, he has consistently denied unduly influencing JH to engage in their relationship. Not only did JH admit to government agents that their sexual relationship was consensual, thousands of email communications reveal that their relationship was respectful, mutually supportive, and motivated by genuine feelings of love and caring. Purviance insisted that JH be called to testify, and insisted that her testimony was essential in order to overcome the rebuttable presumption of undue influence that exits when more than ten years separates the ages of the participants[3]. Challenging the application of the undue influence enhancement was Purviance's only viable defense at sentencing. Neither he nor JH testified.

Trial counsel failed to interview or depose JH or subpoena her to testify at the

---

[3] Section 2A3.2(b)(2)(B) provides for a two level enhancement if a participant otherwise unduly influenced the victim to engage in prohibited sexual conduct. Application note 4 provides that where a participant is at least 10 years older than the victim, there is a rebuttable presumption, for purposes of subsection (b)(2)(B), that such participant unduly influenced the victim to engage in prohibited sexual conduct.

hearing, despite her admissions to the FBI that she had agreed to and helped plan

Purviance's travel to Alaska, that their sexual relationship was consensual (Exh: B),

and despite the fact that she had engaged in on-line sexual activity with two other

males before becoming sexually involved with Purviance. (Exh. M, pp. 8-14.) Defense

counsel instead focused on what she perceived to be JH's personal characteristics - her

intelligence, maturity, and sexually inquisitive nature - to show that she was not

unduly influenced. Although accurate, these observations could not answer the

ultimate question of whether Purviance's conduct compromised JH's volition. Absent

JH's testimony concerning how she personally felt and responded to Purviance, the

district court was forced to speculate about whether Purviance had exerted sufficient

influence to compromise JH's behavior.

Counsel has a duty to make "reasonable investigations or to make a reasonable

decision that makes particular investigations unnecessary." *Strickland*, *466* U.S. at

691, 104 S.Ct. 2052. *Strickland's* rule requiring "reasonable professional judgments"

before limiting investigation was offended here. *Riley v. Payne,* 352 F.3d 1313 (9th

Cir. 2003). When a lawyer does not put a witness on the stand, his decision will be

entitled to less deference than if he interviews the witness. *Lord v. Wood,* 184 F.3d

1083, 1095-96, fn. 8 (9th Cir.1999) (counsel's performance was deficient where

counsel failed to interview three witnesses who had material evidence as to their

client's innocence).

There can be no question that JH's presence and testimony at sentencing was

material, indeed was essential for the adequate presentation of Purviance's only viable defense. Given JH's favorable interview statements, counsel should have called her to the stand to personally testify about her relationship with Purviance and whether his conduct compromised her volition. The Ninth Circuit has held that "a lawyer who fails adequately to investigate, and to introduce into evidence, evidence that demonstrates his client's factual innocence, or that raises sufficient doubt as to that question to undermine confidence in the verdict, renders deficient performance." *Avila v. Galaza,* 297 F.3d 911, 919 (9th Cir.2002) (quoting *Hart v. Gomez,* 174 F.3d 1067, 1070 (9th Cir.1999).

Application Note 4 to § 2A3.2(b)(2)(B)(undue influence) states: "In determining whether subsection (b)(2)(B) applies, the court should closely consider the facts of the case to determine whether a participant's influence over the victim compromised the voluntariness of the victim's behavior." By its very nature, this is a highly fact-specific, minor-focused inquiry, which requires a careful evaluation of the actual minor involved. Without an opportunity to hear minor's testimony, observe her demeanor, or consider the statements she gave the FBI, the district court was not in a position to fairly assess whether JH's voluntariness was compromised or whether the presumption of undue influence was rebutted. This conclusion follows not only from the nature of the inquiry itself, but also from the minor's previous statements to government investigators, which clearly tend to rebut any presumption of undue influence. (Exh. B.)

Other cases that have confronted the applicability of the undue influence

9

enhancement, albeit within a slightly different factual context, are instructive here. In *United States v. Myers*, 481 F.3d 1107 (8th Cir. 2007), the defendant, who was 37 years old, plead guilty to one count of interstate transportation of a minor with the intent to engage in criminal sexual activity, a violation of § 2423(a). Myers met the minor on line; they fell in love and decided to run away together. *Id*. at p. 1109. The government sought the imposition of an undue influence enhancement under § 2G1.3(b)(2)(B)[4]. What is critical for purposes of this discussion is that the district court based its decision *not to apply* the undue influence enhancement on the minor's deposition testimony, which revealed that the minor had already contemplated running away with another man (Mohammed) before Myers had even entered the picture. *Id.* at p. 1112. The district court found no evidence of undue influence and ruled that the presumption standing alone would be legally insufficient to support the enhancement. The reviewing panel affirmed the district court's decision not to impose the enhancement, noting that the minor's deposition testimony revealed she had already possessed some inclination to leave home before she even encountered Myers, and noting her statements that Myers "didn't have to do anything to convince [her] to go to Kentucky," and that she anticipated having sex with him. *Id.*

*Meyers* highlights the critical importance of presenting the testimony of the individual minor in every case, whether by live testimony or by deposition, in order to satisfy the fact-specific, victim-focused guideline inquiry and potentially defeat the

---

[4] This section contains the exact same language as section 2A3.2(b)(2)(B) and includes the same rebuttable presumption.

presumption of undue influence. The importance of focusing the inquiry on the individual minor involved has been addressed by other courts as well.

A Kentucky district court has held that "where the 'victim' is an adult undercover agent posing as a minor, the United States could not meet the requirements of showing that the victim was unduly influenced." *United States v. Hamm*, 281 F.Supp.2d 929, 930 (W.D.Ky., 2003); *accord United States v. Mitchell*, 353 F.3d 552, 554 (7th Cir. 2003)(deciding that § 2A3.2(b)(2)(B) was inapplicable in cases involving undercover agents posing as victims); *see United States v. Chriswell*, 401 F.3d 459, 469 (6th Cir. 2005)(Because the guidelines specify that the court must look to whether the defendant's "influence over the victim compromised the voluntariness of the victim's behavior (U.S.S.G. § 2A3.2(b)(2)(B), application note 4), the court must engage in a victim-focused inquiry when applying this subsection in every case." As the *Hamm* court noted,

> "This court believes that the guidelines and the notes require a fact specific inquiry about whether the victim's voluntary behavior was compromised by defendant's conduct or influence. *One cannot merely speculate how a defendant's action may have affected the average fourteen year old.* Even though a crime may be committed by actions directed toward a federal agent posing as an underage victim, *to analyze the extent of any undue influence would seem to require an actual victim and actual undue influence.*" *Id.,(emphasis added)*.

These cases suggest that both the guidelines and logic dictate that an inquiry into the applicability of the undue influence enhancement necessarily requires the testimony or statements of the individual minor. Here, JH was neither deposed nor called to testify at the hearing. The only statements disclosed to the defense are

contained in a FBI 302 report, dated March 21, 2006. (Exh. B.) In the report, JH states that she and Purviance began discussion the possibility of Purviance traveling to Alaska to meet JH and also talked about the possibility of having sex. JH admitted that she anticipated having sex with Purviance when he arrived, and that they had both planned this. JH contacted Purviance after her grandmonther died and told him that her parents would be leaving the state and told him that the time was right for him to come. She admitted that they had sex during his visit, and that the sex was consensual. *Id*. Although Purvaince did not testify at the sentencing hearing, his testimony would have confirmed these facts and his genuine love for the minor. (See Exh. N.)

The facts here are similar to those confronted by the *Myers* court in that JH's own statements to investigators reveal that Purviance did not compromise her volition. Unfortunately, the district court did not have before it either her statements or her testimony as to what she saw, heard, felt, and experienced, all of which was essential for any fact-specific inquiry concerning whether she was acting voluntarily when she invited Purviance to Alaska and had sex with him. Had trial counsel deposed JH or called her to testify at sentencing, there is a reasonable probability, given her previous admissions, that the evidence elicited would have rebutted the presumption, and the enhancement would not have been applied. Purviance was therefore prejudiced by his counsel's omissions.

### D. The Government Violated *Brady v. Maryland* When It Failed To Disclose The Substance Of JH's Second Government Interview.

JH's initial interview was memorialized in a FD-302 on March 21, 2006, which

12

was provided to the defense. (Exh B.) At some point after Purviance pled guilty, the prosecutor informed defense counsel that JH had been interviewed by the government a second time. Despite defense counsel's request, the government failed to disclose the contents of the subsequent interview. (Exh. L.)

The nondisclosure of impeachment evidence falls within the general rule of *Brady v. Maryland,* 373 U.S. 83, 83 S.Ct. 1194 (1963), when the "reliability of a given witness may well be determinative of guilt or innocence." *United States v. Bagley,* 473 U.S. 667, 105 S.Ct. 3375, 87 L.Ed.2d 481 (1985). This rule encompasses evidence "known only to police investigators and not to the prosecutor." *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995). Therefore compliance with *Brady,* requires that "the individual prosecutor learn of any favorable evidence known to the others acting on the government's behalf in this case, including the police." *Id.* The "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment." *Brady,* 373 U.S. at 87, 83 S.Ct. at 1196-97.

Here, the prosecutor either negligently or intentionally failed to disclose the content of JH's second interview with government investigators. Given her previously favorable statements to investigators, her subsequent statements would most likely have been material to the question of whether the enhancement was warranted. The fact that the government failed to disclose the content of the second interview and failed to call JH to testify at the hearing suggests that her statements might have been

favorable for the defense. For this reason as well, Purviance is entitled to resentencing[5].

### E. Counsel's Failure To Notify The Court Of The Actual Conflict That Existed Between Herself And Petitioner And Failure To Withdraw Prior To Sentencing Qualifies As Ineffective Assistance.

Purviance was convinced, based on the loving nature of their relationship, that JH's presence and testimony at sentencing would undermine the rebuttable presumption that he had unduly influenced her and ultimately defeat the application of the enhancement. In fact, his decision to plead guilty was based on trial counsel's assurance that she would call JH to testify at sentencing. (Exhs: A, I, J, and K.) When just days before the sentencing hearing, trial counsel informed Purviance that she had changed her mind and decided not to call JH, he continued to insist that her presence was absolutely necessary, and reiterated his belief that her testimony would be consistent with the statements she had made to government investigators, would elucidate the fundamental loving nature of their relationship, and would support his contention that the undue influence enhancement was inappropriate. (Exh: A, K.)

This fundamental disagreement was not merely strategic, but amounted to an irreconcilable conflict of interest because Purviance had predicated his decision to

---

[5] Federal Rules of Civil Procedure 16(a)(2), which prescribes the minimum amount of discovery to which the parties are entitled, is not intended to limit the judge's discretion to order broader discovery in appropriate cases. *See* 2 C. Wright, Federal Practice and Procedure § 254, p. 81, and n. 60 (2d ed. 1982) ("Because *Brady* is based on the Constitution, it overrides court-made rules of procedure. Thus, the work-product immunity for discovery in Rule 16(a)(2) prohibits discovery under Rule 16 but it does not alter the prosecutor's duty to disclose material that is within *Brady*. *United States v. Armstrong*, 517 U.S. 456, 116 S.Ct. 1480 (1996).

plead guilty based on counsel's representation that she would call JH to testify. The Sixth Amendment guarantee of effective assistance of counsel includes the right to representation free from conflicts of interest. *Wood v. Georgia,* 450 U.S. 261, 271-72 (1981). If a conflict of interest arises, counsel is generally bound by the Rules of Professional Conduct to notify the court of the conflict. *Pfaff v. Washington*, 2007 WL 4225059, *6 (W.D. Wash., 2007); *United States v. Millan*, 817 F.Supp. 1072, 1086 (S.D.N.Y., 1993)(recognizing obligation of counsel to notify court of conflict of interest)[6].

With knowledge that Purviance had predicated his decision to plead guilty on counsel's willingness to call JH to testify at sentencing, trial counsel should have informed the court of the conflict and given him an opportunity to request substitute counsel before proceeding to the sentencing hearing. Her failure to reveal the conflict qualifies as ineffective assistance. Had Mr. Purviance known his attorney was not going to call JH to testify and had he understood that he had a right to request new counsel, at the very least he would have requested substitute counsel to represent him at sentencing[7]. (Exh: K, no. 4.)

In response to Purviance's concerns, counsel subsequently informed him that not calling JH to testify was "probably an appealable issue," which was a tacit

---

[6] Alaska Rules of Professional Conduct, Rule 1.7, Alaska Comment provides that "If facts which would lead one to believe a conflict of interest exists come to the attention of the lawyer after representation has begun, the lawyer should determine whether a conflict does exist with all reasonable diligence."

[7] Mr. Purviance does not seek to vacate his guilty plea, but requests the opportunity for resentencing or in the alternative an evidentiary hearing to further prove his claims.

admission that an actual conflict existed involving the adequacy of her representation, and later discouraged him from filing an appeal. (Exh: A, ¶ 18; See Pet. pp. 22-23); *See Smith v. Stewart*, 241 F.3d 1191, 1194 (9th Cir. 2001), *reversed on other grounds*, (an attorney who discovers a colorable claim of ineffective assistance of counsel must immediately withdraw, notify the court that there is such a claim, and allow the court to appoint an attorney who has no conflict in representing that client).

### F. Counsel's Failure To Challenge The Reasonableness Of The Court's Imposition Of A 25 Year Term Of Supervised Release Qualifies As Ineffective Assistance.

Title 18 U.S.C. § 3583 authorizes a term of supervised release for a Class A or B felony of not more than five years. In determining the length of the term the statute instructs the sentencing court to consider the factors set forth in sections 3553(a)(1), (a)(2)(B), (a)(2)(C), (a)(2)(D), (a)(4), (a)(5), (a)(6), and (a)(7). Although § 3583(k) granted the trial court discretion to impose a term of supervised release in this case of between 5 years to life, the circumstances surrounding this case do not warrant a term of that duration.

In deciding on the term of supervised release, the trial court was obligated to consider not only the nature and circumstances of the offense and the history and characteristics of the defendant, but also the kinds of sentences and sentencing range established for the offense, and the need to avoid unwarranted sentence disparities among defendants with similar records, who have been found guilty of similar conduct. *See United States v. Kelly*, 510 F.3d 433 (4th Cir. 2007)(reviewing panel found 63-month sentence with 10 years of supervised reasonable for defendant who

16

was convicted of traveling in interstate commerce for the purpose of having sex with a 12-year-old virgin (an arrangement he had made though an adult prostitute), who planned to give the child drugs and alcohol, and who had been previously convicted for the attempted rape of a 12 year old).

Under Federal Rules of Criminal Procedure, Rule 32(i)(3)(B), the sentencing court must make specific rulings on disputed issues. The rule requires a district court to resolve all objections to the presentence report at the sentencing hearing. *United States v. Standard*, 207 F.3d 1136, 1142-43 (9th Cir. 2000). "For each disputed fact upon which the district court intends to rely in imposing the sentence, the district court must make an explicit factual finding that resolves the dispute. *United States v. Carter*, 219 F.3d 863, 867 (9th Cir. 2000). The court's findings must be explicit in order to allow for meaningful appellate review." *United States v. Thomas*, 355 F3d. 1191, 1200 (9th Cir. 2004). "Strict compliance with the rule is required." *United States v. Fernandez-Angulo*, 897 F.2d 1514, 1516 (9th Cir. 1990)(en banc). The Supreme Court recently instructed sentencing courts to set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasoned basis for exercising his own legal decision making authority. *Rita v. United States,* --- U.S. ----, ----, 127 S.Ct. 2456, 2468, 168 L.Ed.2d 203 (2007).

The probation office recommended a 25 year term of supervised release. (PSR, Sent. Recommend., p. 2.) Absent a defense objection, the district court did not have to address the propriety of the recommended term or explain its reasons for adopting the recommendation. Counsel's failure to object to the length of the term at sentencing

prejudiced Purviance at the district court proceedings because it failed to create the necessary record for meaningful appellate review and prejudiced his appellate challenge by reducing the standard of review to plain error only. *See United States v. Rearden,* 349 F.3d 608, 618 (9th Cir. 2003).

### G. Counsel's Failure To Challenge Special Conditions Of Supervised Release Was Ineffective.

Conditions of supervised release must satisfy the requirements of 18 U.S.C. § 3583(d). Section 3583(d)(2) requires that a condition of supervised release "must involve no greater deprivation of liberty than is reasonably necessary for the purposes of supervised release - that is, to achieve deterrence, public protection, or offender rehabilitation." *United States v. Sales,* 476 F.3d 732, 735 (9th Cir. 2007) (citing *United States v. T.M.,* 330 F.3d 1235, 1240 (9th Cir.2003)(internal quotation marks omitted).

"In light of the statute's recognition that supervised release conditions put a defendant's liberty at stake, the burden should fall on the government to demonstrate that the statutory standards have been met." *United States v. Weber*, 451 F.3d 552, 558 (9th Cir. 2006). If an imposed condition of supervised release implicates a defendant's significant liberty interest, the district court must support its decision on the record with record evidence that the condition of supervised release sought to be imposed is "necessary to accomplish one or more of the factors listed in § 3583(d)(1)" and "involves no greater deprivation of liberty than is reasonably necessary." *Id*., at p. 560.

Here, the district court did not support its decision on the record for imposing

the following special conditions of supervised release in this case (Exh. O):

> No. 11 – Pursuant to the Adam Walsh Protection and Safety Act of
> 2006, the defendant shall conform with sex offender registration laws and
> other laws which exist in any jurisdiction where he resides or visits…."
> No. 12 – The defendant shall participate in a program of sex offender
> assessment and treatment, as directed by the probation officer, until such time
> as he is released from the program…Any refusal to submit to such assessment
> or tests as scheduled is a violation of the conditions of release." (Exh: p. 5;
> Exh. O, pp. 4-6.)

Petitioner contends that conditions No. 11 and 12 will subject him to

either plethysmograph or polygraph testing when he is released, both of which

are inappropriate because they involve a greater deprivation of liberty than is

reasonably necessary.

The Ninth Circuit has held that "…plethysmograph testing is

exceptionally intrusive in nature and duration….[and] implicates a particularly

significant liberty interest." *United States v. Weber*, 451 U.S. at p. 563.

Furthermore, *Weber* noted that the reliability of the test has been severely

questioned. *Id*., at p. 564. Only an individualized determination that

plethysmograph testing would, given the defendant's characteristics and

criminal background, reap its intended benefits will justify the intrusion into a

defendant's significant liberty interest in his own bodily integrity. *Id*. at p. 567.

Because counsel failed to object to the imposition of plethysmograph testing,

and the court failed to conduct the necessary inquiry for imposing such an

invasive condition, a sentencing remand is warranted.

Purviance also contends that the special conditions imposed will likely subject him to polygraph tests upon his release, in conjunction with the probation ordered programs of sex offender assessment and treatment. A defendant does not lose his Fifth Amendment protection against self-incrimination by reason of a conviction. *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005). The risk of polygraph examinations and the potential for self-incrimination during an assessment or treatment program is real and appreciable and not merely speculative. *Id*. at p. 1135. An invocation of the Fifth Amendment privilege under these circumstances could result in the revocation of Purviance's probationary term. When probation and supervised release terms are at issue, a court must determine whether the alleged Fifth Amendment problem truly implicates the defendant's conditional liberty. *Id*. at p. 1139. Because counsel failed to object to the imposition of plethysmograph testing, and the court failed to conduct the necessary inquiry for the condition, a sentencing remand is warranted.

### H. Petitioner Should Be Resentenced And Given The Opportunity To Perfect His Right To Appeal, Or In the Alternative, He Should Be Afforded An Evidentiary Hearing To Further Prove His Claims.

Petitioner contends that the facts and allegations set forth in his initial petition and this supplement are sufficient to prove that he received ineffective assistance from his trial counsel, which resulted in a sentencing proceeding that was fundamentally unfair and unreliable. He therefore requests that he be afforded a new sentencing hearing and given an opportunity to adequately litigate the applicability of the undue

influence enhancement, as well as to perfect his right to an appeal. In the alternative, he requests that he be granted an evidentiary hearing, if necessary, to further prove his claims.

A federal prisoner moving for relief is to be granted a hearing "(u)nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief". 28 U.S.C. § 2255(b); *See Blackledge v. Allison*, 431 U.S. 63, 74, fn. 4 (1977). Since the record in this case does not conclusively show that Purviance is entitled to no relief, he would be entitled to an evidentiary hearing if the court concludes that his claims require proof that is outside the existing record.

**IV**

**CONCLUSION**

For all of the aforementioned reasons, this court should order the writ to issue and grant Petitioner the prayed for relief.

DATED: April 12, 2008                          Respectfully submitted

                                               _____
                                               Jerald Brainin, Attorney for
                                               Petitioner Brock Purviance

DECLARATION OF SERVICE

I, Jerald Brainin, declare that I am over eighteen years of age and not a party to the within cause; my business address is, P. O. Box 66365, Los Angeles California, 90066. I served a true copy of the attached SUPPLEMENT TO FILED PRO SE PETITION FOR HABEAS CORPUS WITH ACCOMPANYING MEMORANDUM OF POINTS AND AUTHORITIES AND ADDITIONAL EXHIBITS on each of the following by electronic filing on April 13, 2008.

Audry Renschen
Assistant United States Attorney
222 West Seventh Ave. #9, Rm 253
Anchorage, AK 99513-7567


I declare under penalty of perjury that the foregoing is true and correct. Executed on April 13, 2008 at Los Angeles, California.

_____

Jerald Brainin