ORIGINAL

RECEIVED
MAR 19 2008
Clerk, U.S. District Court
Anchorage, Alaska

```
                   UNITED STATES DISTRICT COURT
                        DISTRICT OF ALASKA

UNITED STATES OF AMERICA,   .
                            .   Case No. 3:06-cr-00040-JWS
            Plaintiff,      .
                            .   Anchorage, Alaska
    vs.                     .   October 6, 2006
                            .   3:48 o'clock p.m.
BROCK PURVIANCE,            .
                            .   PROPOSED CHANGE OF PLEA HEARING
            Defendant.      .
. . . . . . . . . . . . . . .

                      TRANSCRIPT OF PROCEEDINGS
              BEFORE THE HONORABLE JOHN W. SEDWICK
                   UNITED STATES DISTRICT JUDGE

APPEARANCES:

For the Plaintiff:        AUDREY J. RENSCHEN, ESQ.
                          U. S. Attorney's Office
                          222 West Seventh Avenue, #9
                          Anchorage, Alaska  99513
                          (907) 271-5071

Probation Officer:        TIM ASTLE
                          U. S. Probation/Pretrial Service
                          222 West Seventh Avenue, Room #48
                          Anchorage, Alaska  99513
                          (907) 271-5494

For the Defendant:        SUE ELLEN TATTER, ESQ.
                          Federal Public Defender's Agency
                          601 West Fifth Avenue, Suite 800
                          Anchorage, Alaska  99501
                          (907) 646-3400

Court Recorder:           APRIL KARPER
                          U.S. District Court
                          222 West Seventh Avenue, #4
                          Anchorage, Alaska  99513
                          (907) 677-6102
```

```
 1   APPEARANCES (Continued):
 2   Transcription Service:
 3                                    T. M. TRANSCRIBING
                                      1980 Commodore Drive
 4                                    Anchorage, Alaska   99507
                                      (907) 277-8591
 5

 6   Proceedings recorded by digital sound recording, transcript
 7   produced by transcription service.
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

3

<u>ANCHORAGE, ALASKA - FRIDAY, OCTOBER 6, 2006</u>

(Call to Order of the Court at 3:48 o'clock p.m.)

(Defendant present)

(Log 3:48:18)

THE CLERK: All rise. His Honor the Court, the United States District Court for the District of Alaska is now in session, the Honorable John W. Sedwick presiding. Please be seated.

THE COURT: Good afternoon.

MS. RENSCHEN: Good afternoon.

MS. TATTER: Good afternoon, Judge.

THE COURT: We're here this afternoon, getting started a little late, I'm sorry. Just was unable to complete everything I needed to do in order to start on time. We are here for proceedings in Case 3:06-cr-040, the United States versus Brock Purviance. Ms. Tatter, I am advised that your client wishes to consider the entry of a plea at this time. Is that correct, ma'am?

MS. TATTER: Yes, sir.

THE COURT: Madam Clerk, please give Mr. Purviance an oath.

THE CLERK: Sir, if you would please stand and raise your right hand.

BROCK PURVIANCE, DEFENDANT, SWORN

VOIR DIRE EXAMINATION

1  THE CLERK: Thank you, you may be seated. For the
2  record, please state your full name, spelling your last name.
3  A    Brock Jon Purviance, P-U-R-V-I-A-N-C-E.
4  THE CLERK: Thank you.
5  A    Jon is J-O-N.
6  THE CLERK: Thank you.
7  A    Yeah.
8  BY THE COURT:
9  Q    Mr. Purviance, we're here because you're considering
10 pleading guilty to charges brought against you by the United
11 States. You haven't yet pled guilty to any charges, so I'm
12 going to ask you some questions. I will remind you that you've
13 taken an oath pursuant to which you've promised to speak
14 truthfully. That means if you speak falsely regarding any
15 material matter you could be prosecuted for perjury. Do you
16 understand that?
17 A    Yes, sir.
18 Q    I want to ask questions regarding your knowledge of the
19 consequences of pleading guilty and some questions to be sure
20 that you're competent to make an important decision here this
21 afternoon. I will remain -- I will remind you that you do have
22 a right to remain silent, so if you choose to speak what you say
23 may be used against you. Do you understand that?
24 A    I do.
25 Q    What's your date of birth, Mr. Purviance?

1  A  May 3rd, 1976.

2  Q  How far did you go in school?

3  A  I'm a college graduate, 16 years.

4  Q  Where did you attend college?

5  A  Metropolitan State College of Denver.

6  Q  And when did you graduate?

7  A  2002, December.

8  Q  What kind of work have you had since you left college?

9  A  Since I left college I've worked as a loan officer and
10 following that I'm a business owner, co-owner of Denver School
11 of Music, where I taught music.

12 Q  Are you presently suffering from any illness?

13 A  No.

14 Q  Are you presently suffering from any injury?

15 A  No.

16 Q  Have you ever been treated for addiction to drugs,
17 including alcohol?

18 A  I have not.

19 Q  Have you ever been treated for any mental illness?

20 A  No.

21 Q  Are you presently under the influence of any drug,
22 including prescription drugs?

23 A  I am not.

24 Q  The charge that the government has brought against you is
25 set out in a document which is known as an indictment.  Did you

6

1  read it?
2  A   I have read that.
3  Q   And did you discuss it with Ms. Tatter?
4  A   Yes.
5  Q   The charge to which you may be pleading guilty this
6  afternoon is interstate travel with intent to engage in illicit
7  sexual conduct, which is a violation of 18 United States Code,
8  Section 2423(b); that is the charge set out in the indictment
9  which you've read. You are presumed to be innocent of that
10 charge and for you to be found guilty the government would have
11 to overcome the presumption. To do that, the government would
12 have to prove to a jury each essential element of that crime
13 beyond a reasonable doubt. The elements which the government
14 would have to prove in this case is -- are, first, that when you
15 were 28 years old you traveled in interstate commerce from
16 Colorado to Alaska, and, second, you engaged in that interstate
17 travel with the specific intent of engaging in illicit sex with
18 Jane Doe, who was then 15 years of age. Illicit sex in this
19 context means sexual contact and sexual penetration with a
20 person who is over 12 but under 16 years of age and who was at
21 least four years younger than you. Do you have any questions
22 about what the government would have to do to prove your guilt?
23 A   No, sir.
24 Q   Congress has enacted statutes which the court must consider
25 when it determines the sentence to be imposed in any proceeding

7

1  in this court. And Congress has also authorized the United
2  States Sentencing Commission to publish advisory guidelines
3  which the court must also consider. Have you discussed how the
4  statutes and guidelines might apply to you with your lawyer?
5  A    Yes, I have.
6  Q    You understand that your sentence may be significantly
7  affected by your prior criminal record if you have one?
8  A    I do.
9  Q    Is Ms. Tatter aware of all the facts that would be
10 important in defending you against the government's charge?
11 A    Are you asking me that?
12 Q    Yes.
13 A    Yes.
14 Q    Has she answered any questions you asked her?
15 A    She's answered a lot of questions.
16 Q    Has she failed to answer any questions you asked?
17 A    No.
18 Q    Are you satisfied with her lawyer's --
19 A    Yes.
20 Q    -- with her services as your lawyer?
21 A    Yes, sir.
22 Q    Did you talk to Ms. Tatter about pleading guilty to the
23 charge I described?
24 A    Yes, I have.
25 Q    Now, as a result of those discussions was a written

```
 1   document called a plea agreement created?
 2   A    Yes.
 3   Q    Did you read it?
 4   A    I've read it.
 5   Q    Did you discuss it with your lawyer?
 6   A    Yes, I have.
 7   Q    Did you sign it?
 8   A    Yes.
 9   Q    The plea agreement which I have reviewed appears to set out
10   the following basic bargain:  You agree to plead guilty to one
11   count of interstate travel with the intent to engage in illicit
12   sexual conduct, the charge in the indictment.  You agree not to
13   advocate for any downward departure under the guidelines, but
14   you may advocate for an appropriate sentence based on the 18
15   United States Code, Section 3553.  And, finally, you agree to
16   waive your right to appeal your sentence and your right to
17   collaterally attack your conviction and sentence on any ground
18   except that your plea wasn't really voluntary or that you did
19   not really have effective assistance from your lawyer, Ms.
20   Tatter.  In exchange, the government promises not to prosecute
21   you on any other charges based on its current investigation.
22   Furthermore, the government agrees that if you remain candid and
23   truthful the government will request a full three-level downward
24   adjustment in your guideline offense level for acceptance of
25   responsibility.  Is that the basic bargain you have with the
```

```
 1   government?
 2   A    Yes.
 3   Q    Do you realize that by waiving your right to appeal and to
 4   collaterally attack your conviction and sentencing you're giving
 5   up important rights?
 6   A    I do.
 7   Q    Do you understand that by making these waivers you're
 8   accepting any sentence I impose so long as it's consistent with
 9   your plea agreement?
10   A    I do.
11   Q    There are other details in your plea agreement in addition
12   to those that I have summarized.  Do you have any questions
13   about the plea agreement at this time?
14   A    I don't.
15   Q    Mr. Purviance, has anyone promised you anything not
16   contained in your plea agreement to persuade you to plead
17   guilty?
18   A    No.
19   Q    Has anyone made any threats to persuade you to plead
20   guilty?
21   A    No, sir.
22   Q    You're considering pleading guilty to a felony charge.  As
23   a felon in most jurisdictions you would lose the right to vote,
24   the right to serve on a jury, the right to hold public office
25   and the right to possess firearms.  You understand these would
```

9



1   THE COURT: Okay, just give me a moment. 3583 --
2   MS. RENSCHEN: Sure.
3   THE COURT: -- what?
4   MS. RENSCHEN: Sub-(k).
5   THE COURT: Sub-(k).
6   MS. RENSCHEN: 3583(k).
7   THE COURT: Well, I still don't understand where the
8   five-year minimum comes from.
9   MS. RENSCHEN: Your Honor, under the conventional
10  statutes, this crime, because of its maximum sentence of 30
11  years, would qualify for up to five years' imprisonment.
12  Actually it's technically not a minimum of five years.
13  THE COURT: That's what I was confused about.
14  MS. RENSCHEN: It -- I'm sorry.
15  THE COURT: I mean, it's any term up to life, right?
16  MS. RENSCHEN: It is any term. I misspoke.
17  THE COURT: All right, there's not -- so maybe I
18  misread the plea agreement, but I read it to say it was from
19  five to life.
20  MS. RENSCHEN: That was my mistake, Your Honor, it is
21  any term of years to life.
22  THE COURT: All right, thank you very much, Ms.
23  Renschen.
24  Q   Do you understand that supervised release is something you
25  may have to endure once you get out of prison and it could last

1  for up to the rest of your life?

2  A    I understand that.

3  Q    Supervised release would involve a variety of conditions
4  and restrictions on your liberties, requiring you to make
5  regular contact with the probation service, couldn't commit any
6  additional crimes or that would be a violation of supervised
7  release.  However, if you were to violate the terms of
8  supervised release that could result in further incarceration.
9  Do you understand that?

10 A    I understand that.

11 Q'   The sentence which is imposed might be harsher than the one
12 you're hoping for, or even one the government recommends.  If
13 that were to happen you'd still be bound by a plea of guilty and
14 unable to withdraw that plea so long as the punishment were
15 consistent with your plea agreement.  Do you understand that?

16 A    I understand.

17 Q    Mr. Purviance, you have a right to maintain a plea of not
18 guilty and to proceed to trial before a jury.  At that trial
19 you'd be entitled to have a lawyer and the government will pay
20 the lawyer if you can't afford to.  And at that trial you'd have
21 a right to see all the government's witnesses, to hear their
22 testimony and to see any other evidence that's introduced.
23 You'd have a right to have the government's witnesses cross
24 examined by your lawyer.  You could compel other people to
25 attend the trial.  You might testify in your own defense, but of

1  course you do have a right under the Fifth Amendment to the
2  Constitution of the United State not to incriminate yourself.
3  So in the exercise of that right it might be your decision not
4  to testify, and if you chose not to testify your decision not to
5  testify could not be used against you in any way.  If you choose
6  to plead guilty you'll lose all those rights I just mentioned
7  that you would otherwise have at trial.  Do you understand that?
8  A     Yes, sir.
9              THE COURT:  I need to inquire, Ms. Renschen, if
10 there's any victim who would like to be heard at this
11 proceeding?
12             MS. RENSCHEN:  Your Honor, not at this proceeding.
13 There -- the victim's parents are present and they do want to be
14 heard from at sentencing, but not today.
15             THE COURT:  Not today, all right.  Thank you.  At this
16 point, then, Ms. Renschen, I'll call upon you to advise the
17 court and the defendant of those things among others you're
18 prepared to prove if you take this case to trial.
19             MS. RENSCHEN:  Your Honor, had this matter proceeded
20 to trial the government would have presented evidence showing
21 that Mr. Purviance met a young girl who I will refer to as Jane
22 Doe during the summer of 2003 in a music chat room on the
23 internet.  They began exchanging personal information, such as
24 their ages, sex and locations.  At that time the defendant was
25 27 years old and Jane Doe was either 13 years old or had just

14

1  turned 14 years old. By June of the following summer, 2004, Mr.
2  Purviance was communicating daily with the child either over the
3  telephone or by computer and their conversations were sexual.
4  Mr. Purviance in the course of those conversations even
5  commented on his interest in someone half his age.
6      After these repeated conversations and internet messaging
7  with the child, Mr. Purviance decided to travel to Alaska during
8  the time that Jane Doe's parents were leaving the state to
9  attend the funeral of a family member who lived in the Lower 48.
10 Mr. Purviance purchased his airline ticket on August 11th, 2004,
11 and actually traveled to meet Jane Doe on August 18th, 2004, and
12 stayed here in Alaska until August 25th of 2004.
13     Before their in-person meeting Mr. Purviance persistently
14 engaged in on-line sexual conversations with the child. He
15 discussed with her having oral and vaginal intercourse with her,
16 and he suggested in graphic detail how he could perform those
17 sex acts with her. Mr. Purviance inquired whether the girl
18 would willingly allow him to penetrate her without a condom.
19 During their on-line conversations Mr. Purviance also directed
20 the child on masturbation and orgasm.
21     During the week that he traveled to Alaska in 2004 he
22 engaged in sex with the then-15-year-old child on at least three
23 occasions. And during that time on August 18th, 2004, Mr.
24 Purviance was a Colorado residence -- resident, he was 28 years
25 old when he traveled here to Anchorage, Alaska, from Colorado to

15

1  have sexual contact and sexual intercourse with Jane Doe, who
2  was here in Anchorage and was 15 years old at the time.
3       THE COURT: Thank you, Ms. Renschen,
4  Q   Are those things true, Mr. Purviance?
5  A   Yes.
6  Q   How do you plead to the charge, Mr. Purviance?
7  A   I plead guilty.
8       THE COURT: I find that the defendant is fully
9  competent and capable of entering an informed plea and his
10 guilty plea is a knowing and voluntary plea supported by an
11 independent basis in fact containing each essentially -- each of
12 the essential elements of the crime charged. For these reasons
13 his plea is accepted. He is adjudged guilty.
14      Mr. Purviance, a written presentence report will be
15 prepared by the probation office, you'll be asked to give
16 information for that report. Your lawyer can be present when
17 you do that. You'll be able to read the report before you're
18 sentenced and you and your lawyer will have a chance to speak at
19 the sentencing hearing.
20      I'm going to reserve approval of the plea agreement until
21 after I review the presentence report. Although I have reserved
22 approval of the plea agreement, you may not withdraw your plea
23 of guilty unless I should later reject the plea agreement or you
24 can show a fair and just reason for doing so in accordance with
25 Rule 11(d)(2)(B) of the Federal Rules of Criminal Procedure.

```
 1        At this time the defendant is referred to the probation
 2   service for a presentence investigation and report.  A
 3   sentencing hearing will be held in this court on December 20,
 4   2006, at 8:30 in the morning.  And that's December 20, 2006.
 5        MS. RENSCHEN:  Your Honor, if I may, I'd indicated
 6   earlier that the victim's parents wish to --
 7        THE COURT:  Yes.
 8        MS. RENSCHEN:  -- attend and participate in the
 9   sentencing.  That time frame is problematic for them because of
10   work considerations.  If the court would be willing, we would be
11   requesting that the sentencing be held sometimes in January if
12   that's a possibility.  There are a lot of pressures coming to
13   bear on them at that time and it would be very helpful if it
14   could be in January.
15        THE COURT:  Well, I already have an extremely busy
16   calendar in January.  When in January is it you're talking
17   about?
18        MS. RENSCHEN:  Give me just a -- (Counsel confers)
19   Judge, it sounds like any time in January at the court's
20   convenience would be workable for them.  December is just a very
21   difficult time.
22        THE COURT:  I think, if I remember correctly, early
23   January is probably possible.  I can't --
24        THE CLERK:  I can pull up the calendar in ACMS.
25        THE COURT:  Hm?
```

T. M. Transcribing
1980 Commodore Drive
Anchorage, Alaska 99507
(907) 277-8591 / Fax (907) 272-9258

```
 1          THE CLERK:  I can pull up the calendar in ACMS.
 2      (The Court confers with the Clerk)
 3          MS. TATTER:  Judge, do you have any time earlier?
 4  Because this is almost a three full months.
 5          THE COURT:  Well, the problem is we need -- I picked
 6  that date because it's just right at the 72 days that we
 7  typically allow for preparation of a presentence report.  The
 8  difference between January -- early January and December 20th
 9  isn't very much.
10          THE CLERK:  So January 1st is Monday.
11          THE COURT:  January 1st is a Monday, so that's --
12          THE CLERK:  That's a holiday.
13          THE COURT:  -- probably a holiday.  All right, we'll
14  set this for January 3rd at 8:30.
15          MS. RENSCHEN:  Thank you for your consideration, Your
16  Honor.
17
18          THE COURT:  I'm sorry?
19          MS. RENSCHEN:  Thank you for your consideration.
20          THE COURT:  Oh, certainly.  All right, so the new time
21  for the sentencing proceeding is the 3rd day of January at 8:30
22  in the morning.  I don't think that's a problem.  If it becomes
23  one I'll issue a minute order changing it.  I will take this
24  opportunity to remind the lawyers that under the Rule 32 of
25  Federal Rules of Criminal Procedure if you have any objection to
    factual statements in the presentence report you have to raise
```

18

1  them with the author of the draft report. If you don't do that
2  I won't consider them at the time of sentencing unless you can
3  show good cause why you didn't more timely raise the matter.
4       Is there anything else we need to do today?
5       MS. TATTER: No.
6       MS. RENSCHEN: No, Your Honor, thank you.
7       THE COURT: All right, we'll adjourn this matter. We
8  should reconvened next on January 3 at 8:30.
9       THE CLERK: All rise. Court now stands adjourned
10 subject to call.
11      (Proceedings recessed at 4:09:37 p.m.)
12
13
14
15
16
17
18
19
20
21
22
23
24
25

19

C E R T I F I C A T I O N

I, Teresa E. Mielke, court approved transcriber, certify that the foregoing is a correct transcript from the official digital sound recording of the proceedings in the above-entitled matter.

_____
Teresa E. Mielke

March 19, 2008

T. M. Transcribing
1980 Commodore Drive
Anchorage, Alaska 99507
(907) 277-8591 / Fax (907) 272-9258